**CORINE, INCORPORATED and Drewland Enterprises, Inc., Appellants**

v.

**Chris HARRIS, Jack E. Harris, Jr., and Chris Harris and Jack E. Harris, Jr., as Co–Trustees under the 2004 Grady Harris Children's Trust, Appellees.**

No. 06–07–00088–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 11, 2008.

Decided April 2, 2008.

Grant D. Blaies, Blaies & Hightower, LLP, Fort Worth, for appellant.

Joseph W. Spence, Shannon, Gracey, Ratliff & Miller, LLP, Fort Worth, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In 1970, Jack and Jo Anne Harris purchased an approximately 528.14–acre tract of land in Johnson County,[1] Texas, from Marie Stevens, Mary Lou Stevens McDonald, and Judy Nell Stevens Ellis. In the conveyance to the Harrises, the three grantors retained, altogether, a 1/16 royalty interest that would last for twenty years and thereafter until there was no mineral production.[2] In 1983, the Harrises con-

---

1. This case has been transferred to this Court as part of the Texas Supreme Court's docket equalization program.

2. The pertinent language from the 1970 deed recites:

    PROVIDED, HOWEVER, that there is excepted from this conveyance and reserved unto Marie Stevens, Mary Lou Stevens McDonald, and Judy Nell Stevens Ellis, their heirs or assigns, for a period of twenty years from this date, and as long thereafter as oil, gas or other minerals are being produced from said land in paying quantities, one-half of the usual one-eighth royalty on all oil, gas, casing head gas and gasoline,

veyed that land to Charles L. Stephens, retaining the following:

> all of those royalty rights reserved by Marie Stevens, her heirs, executors and administrators, in [the 1970 deed], so that if the reversion described therein occurs, then the Grantors, their heirs, executors and administrators, will then be vested with said royalty rights described in said deed.

The meaning of that reservation lies at the heart of this appeal. Appellants, Corine, Incorporated, and Drewland Enterprises, Inc. (collectively Corine), claim under Charles L. Stephens. Appellees, Chris Harris and Jack E. Harris, Jr., Individually and as Co–Trustees under the 2004 Grady Harris Children's Trust (collectively Harris Interests), claim under the Harrises.

The ultimate question before us is to what extent, if any, the Harris Interests, by virtue of the 1983 reservation, own a royalty interest in the property. The trial court granted summary judgment in favor of the Harris Interests, ruling that they own a 1/16 royalty interest in the property. Our analysis leads us to conclude that (1) the Harrises' royalty reservation adopted the size of Marie's royalty interest but not its duration, and (2) the Harris royalty should be measured by only Marie's retained royalty interest. We reform the trial court's judgment to reflect that the Harris Interests own a 1/32 royalty, rather than a 1/16. We affirm the judgment as modified.

We review de novo a decision to grant or deny a summary judgment motion. *See*

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). The standards for reviewing a traditional motion for summary judgment are well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 413 (Tex.App.-Waco 2001, pet. denied). The reviewing court must accept as true all evidence favorable to the nonmovant. *Nixon*, 690 S.W.2d at 549; *Ash*, 54 S.W.3d at 413. Every reasonable inference must be indulged, and all doubts resolved, in favor of the nonmovant. *Grinnell*, 951 S.W.2d at 425; *Ash*, 54 S.W.3d at 413.

If the Harris Interests, based on the evidence in the deeds, could establish that there was no genuine issue of material fact as to any interest they owned in the land, the Harris Interests would have been entitled to summary judgment.

One issue before the trial court, relevant to this appeal, is whether the language in the two deeds, quoted above, is ambiguous. All parties agree that there is no ambiguity, though they differ markedly on the interpretation of the deeds. If the language is ambiguous, there is a fact question for the jury to resolve, making summary judgment improper. *J. Hiram Moore, Ltd. v. Greer*, 172 S.W.3d 609, 614

---

and one-half of the usual and customary royalty on sulphur, coal, uranium, limestone and other minerals in, on or under, or that may be produced from the above described land; it being understood and agreed . . .

. . . .

(d) that upon the expiration of twenty years from this date, if minerals are not being produced in paying quantities, or when minerals cease being produced in paying quantities, from said land, whichever occurs last, this reservation shall terminate, and said royalty interest shall pass to and vest in the Grantees herein [the Harrises], their heirs and assigns, without the necessity of any conveyance by the Grantors, their heirs or assigns, or any other action on the part of either party hereto. . . .

(Tex.2005). If we find the language to be unambiguous, we may construe the deeds as a matter of law. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 381 (Tex.1985). The question of ambiguity in a deed is a question of law. *Cherokee Water Co. v. Freeman,* 33 S.W.3d 349, 353 (Tex.App.-Texarkana 2000, no pet.) (citing *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex.1987)). An instrument is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). If, however, a deed is subject to two or more reasonable interpretations, it is ambiguous. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). An ambiguity creates a fact issue as to the parties' intent. *Id.* An ambiguity does not arise simply because the parties advance conflicting interpretations. *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex.2000) (citing *New Ulm Gas, Ltd.,* 940 S.W.2d at 589). For an ambiguity to exist, both interpretations must be reasonable. *Id.*

To interpret the Harrises' reservation, we look to that language contained in the 1983 deed wherein the Harrises retained the following:

> all of those royalty rights reserved by Marie Stevens, her heirs, executors and administrators, in [the 1970 deed], so that if the reversion described therein occurs, then the Grantors, their heirs, executors and administrators, will then be vested with said royalty rights described in said deed.

The reservation in the 1970 deed was defined by size (1/2 of 1/8 royalty) and duration (for twenty years and so long thereafter as mineral production continues). Was the 1983 reservation also so limited? If one were to look only to the language contained in the first one and one-half lines of the above quoted text, and ignore the fact that the language was part of a reservation by the Harrises, grantees in the 1970 deed, one would conclude that it described only Marie's royalty interest, defined by both its size and duration. But we are not to ignore the remaining language or the context in which it was used. We are to seek the intent of the parties as expressed in the instrument.

■ When interpreting deed language, we will, if possible, construe the deed language to give effect to all provisions therein, rather than striking down any part of the deed, unless an irreconcilable conflict exists within the instrument. *Benge v. Scharbauer,* 152 Tex. 447, 259 S.W.2d 166 (1953); *Dubois v. Jacobs,* 533 S.W.2d 149, 151 (Tex.Civ.App.-Austin 1976, no writ). Even when different parts of a deed appear inconsistent, we should harmonize those apparent inconsistencies, if possible. *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617 (1954); *Du Bois,* 533 S.W.2d at 151.

*(1) The Harrises' Royalty Reservation Adopted the Size of Marie's Royalty Interest but Not Its Duration*

■ The 1970 deed purports to reserve a 1/16 royalty—"one-half of the usual one-eighth royalty on all oil, gas, casing head gas and gasoline." [3] This reservation is good for only twenty years and as long thereafter as there is production on the land. If no such production occurs, or if production ceases after that twenty-year period, then the reservation terminates and the interests reserved would revert to the Harrises, who were the grantees in the Stevens' conveyance. We do not find this language susceptible to more than one reasonable interpretation. Indeed, both parties agree that Marie and her two daugh-

---

**3.** It also reserves "one-half of the usual and customary royalty on sulphur, coal, uranium, limestone and other minerals," but that clause is not in issue here.

ters reserved an interest in oil and mineral royalties in the land conveyed. The disagreement arises when the parties try to decide what became of that interest and, specifically, the meaning of the 1983 deed.

The 1983 deed specifically refers to the reservation that Marie made in 1970 and excepts it from the 1983 conveyance. Corine contends the 1983 deed conveyed fee simple in the real property from the Harrises to Stephens. Corine does not take into account that deed's Exhibit B, which contains a list of easements and reservations which are excluded from the conveyance. The above language is included in that list of reservations. After reviewing the 1983 deed, we find that it, too, is capable of but one interpretation: that the Harrises, in their conveyance to Stephens, specifically referenced the reservation held by Marie in the 1970 conveyance and made a reservation based on that interest.[4]

That reading is confirmed by the added language from the 1983 deed; after describing the reservation, the Harrises added the following:

so that if the reversion described therein occurs [the reversion from Marie and her daughters to the Harrises], then the Grantors [the Harrises], their heirs, executors and administrators, will then be vested with said royalty rights described in said deed.

Clearly, the 1983 deed language demonstrates the intent to reserve something. The only logical conclusion to us, the only one giving meaning to all parts of the 1983 deed, is that the Harrises intended to reserve a royalty interest which was the size of Marie's reservation but which would be applicable after Marie's interest would terminate. By definition, that interest retained by the Harrises could not be burdened with the duration of Marie's royalty interest. Otherwise, the Harrises' 1983

---

4. Corine argues that the 1983 deed contained an exception as opposed to a reservation. "It is manifest that an exception does not pass title itself; instead it operates to prevent the excepted interest from passing at all." *Patrick v. Barrett*, 734 S.W.2d 646, 647 (Tex. 1987). "On the other hand, a reservation is made in favor of the grantor, wherein he reserves unto himself royalty interest, mineral rights and other rights." *Id.* This is a distinction without difference. It could be argued that the 1983 deed contains an exception, as contemplated by *Patrick*, in that Harris prevented the excepted interest, that which Stevens had reserved, from passing. But it would also be accurate to call it a reservation: the Harrises reserved the interest that would revert to them when the condition in the Stevens [1970] deed occurred, to-wit, there was no production from the land after twenty years.

Corine does not really explain how or why the 1983 Harris conveyance is an exception rather than a reservation. In *Patrick*, Tuers sold land to Patrick in 1946, reserving a 1/16 interest in the oil and gas. In 1950, Patrick sold the land, specifically excepting from that sale Tuers' 1/16 interest. The Texas Supreme

Court found this retention of Tuers' 1/16 interest to be an exception, because title in the royalty interest never went from the first seller [Tuers] to the final buyer [Barrett]. *Id.* at 648. Patrick's conveyance also gave the buyer, Barrett, a 1/32 interest in the land's mineral interests; that clause also reserved to Patrick a 1/2 interest. "Patrick *reserved* to himself an undivided 1/2 interest in and to the mineral interest in the tract of land. Therefore, the 1950 deed specifically reserved for Patrick a 1/32nd royalty interest and conveyed to Barrett the remaining 1/32nd royalty interest." *Id.* Based on this reasoning, the Texas Supreme Court held that Patrick owned 3/32 of the oil and gas royalty interest in the land at issue.

Corine does not explain how or why the different terms produce a different result for these parties. As concluded above, the deeds are subject to a single reading: that, in 1970, Marie and her two daughters conveyed property to the Harrises with a reservation which would revert to the Harrises; in 1983, the Harrises conveyed the land and in essence reserved the reversionary interest given the Harrises in the 1970 deed following Marie's royalty interest's termination.

reservation would have been a nullity, retaining nothing. We conclude that the 1983 reservation adopted the size of the 1970 reservation by Marie without adopting its duration.

We overrule Corine's second point of error.

*(2) The Harris Interests' Royalty Should Be Measured by Just Marie's Royalty Interest*

■ The parties also dispute the size of the royalty interest. The Harris Interests assert that the interest should be the full 1/16 royalty interest retained in the 1970 deed, while Corine asserts that, if any interest remains, the size should be limited to the 1/32 interest retained by Marie. We agree with Corine on this point.

The 1970 reservation of a 1/16 royalty was in favor of Marie (who was allocated half of it), Mary Lou (who was allocated 1/4), and Judy (who was allocated 1/4), while the 1983 reservation was defined by the 1970 reservation in favor of Marie, "her heirs, executors, and administrators."

■ The Harris Interests argue that Mary Lou's and Judy Nell's interests were included in the 1983 reservation because the reservation lists not only Marie, but also "her heirs, executors, and administrators." We disagree. Ordinarily, language referring to an individual's "heirs and assigns," and the like, is understood to describe the quality of the interest in land, as including rights of inheritance and alienability, rather than to be a literal reference to the individual's heirs. *See Tex. Co. v. Meador*, 250 S.W. 148 (Tex.Com.App.1923, judgm't adopted); *Du Bois*, 533 S.W.2d at 151; *Zahn v. Nat'l Bank of Commerce of Dallas*, 328 S.W.2d 783 (Tex.Civ.App.-Dallas 1959, writ ref'd n.r.e.). "Heirs and assigns" as used in a conveyance are "words of limitation"—for example, indicating that the interest in land is inheritable and alienable—not "words of pur-

chase"—indicating the persons who are to receive the interest. *See* BLACK'S LAW DICTIONARY 1635 (8th ed.2004) (definitions of "words of limitation" and "words of purchase").

We also note that Marie had no "heirs, executors, or administrators" until her death, and that would have to be determined at that time, not at the time of the 1970 or 1983 deeds. Finally, we point out that the same phrase referring to "heirs, executors, and administrators" was used in other places in the deed, clearly used as words of limitation rather than words of purchase.

The words used in the 1983 reservation were words of limitation and did not refer to Mary Lou and Judy Nell for the purpose of incorporating their interests.

We conclude that the 1983 deed reserves only a royalty interest equal to Marie's 1/32 royalty. Therefore, the trial court erred in ruling that the Harris Interests, by virtue of the 1983 reservation, owned the full 1/16 interest reserved by Marie and her two daughters.

Accordingly, we reform the trial court's judgment to reflect the Harris Interests own a 1/32 interest in the oil and gas royalty interests in the land at issue. We affirm the trial court's judgment as reformed.