

**IN THE**

**TENTH COURT OF APPEALS**

**No. 10-13-00103-CV**

**DIANA C. KIMBLE, PAULA C. HICKS, JOHN R. HICKS, ALLISON A. WALLACE DAVIS, JOHN R. HICKS, TRUSTEE OF THE RICHARD CLARK HICKS TRUST, TRAVIS N. KIMBLE, TRACE NEWMAN KIMBLE, BRADY N. KIMBLE, EDWARD I. ADAMS, BOBBIE J. ADAMS, LEE HUDSON MURRAY, & KRISTI RAY,**

**Appellants**

**v.**

**KRISTOPHER P. GOSTECNIK, WELLS FARGO BANK, TRUSTEE OF THE ALBERT E. AND MYRTLE GUNN YORK TRUST, AND FPJ LAND COMPANY, LTD.,**

**Appellees**

**From the 82nd District Court**
**Robertson County, Texas**
**Trial Court No. 12-04-19071-CV**

**MEMORANDUM OPINION**

This appeal is the result of a dispute between different groups of devisees who all claim to own royalties in the same property. Two groups of plaintiffs, now

appellees, FPJ Land Company, Ltd. (FPJ) and Kristopher P. Gostecnik and Wells Fargo, trustee of the Albert E. and Myrtle Gunn York Trust (Gostecnik), sued to have the trial court construe certain language in 17 deeds and to declare their rights to royalties in that property. The defendants, now appellants, Diana C. Kimble, Paula C. Hicks, John R. Hicks, Allison A. Wallace Davis, John R. Hicks, trustee of the Richard Clark Hicks Trust, Travis N. Kimble, Trace Newman Kimble, Brady N., Kimble, Edward I. Adams, Bobbie J. Adams, Lee Hudson Murray, and Kristi Ray Murray Addington (Kimble), claimed ownership of the royalties in the same property. FPJ and Gostecnik each filed a combined traditional and no evidence motion for summary judgment, both of which were granted by the trial court. Because the trial court did not err in granting the motions for summary judgment, the trial court's judgment is affirmed.

## BACKGROUND

In 1949, Guy Warren and his wife, Gazzie, sold approximately 2,214 acres to W.A. Southworth and his wife, Dena Belle. Expressly excepted from the conveyance and reserved to Warren was an undivided 1/2 non-participating royalty interest in and to all oil royalty, gas royalty, royalty on casinghead gas, gasoline, and other mineral royalties. The reservation was for a term of 15 years from the date of the conveyance, that being October 10, 1949, and as long thereafter as oil, gas, or other minerals were produced in "commercial quantities." Southworth immediately sold the property to

H.P. Culpepper and J.C. Culpepper. Southworth retained no royalty interest in the property but excepted from the conveyance Warren's previous reservation.

In 1951, Culpepper sold approximately 2,207 acres of the property to John L. Blair and A.E. York. The conveyance was made subject to the Warren reservation. Culpepper further reserved, saved, and excepted from the conveyance an undivided "one-eighth (1/8th of 1/8th)" non-participating interest in and to all of the oil royalty, gas royalty and royalty on casinghead gas, gasoline and other minerals for a period of 15 years from October 10, 1949, and as long thereafter as oil, gas or other minerals were produced from the property "in commercial quantities." The next year, Warren and Southworth sold to Blair and York an undivided 1/64th interest in and to all of the oil, gas, and other minerals in the property with the caveat that if no oil, gas, or other mineral is being produced in paying quantities on October 10, 1964 (the same date the Warren reservation and the Culpepper reservation expired), the conveyance became "null and void and of no further force or effect."

In 1953, and in 17 separate deeds, Blair and York sold the property to the Veterans' Land Board. The conveyances were made subject to the Warren reservation, less the 1/64th interest conveyed by Warren and Southworth to Blair and York, and the Culpepper reservation. The deeds contained the additional following language:

> And provided, it is especially stipulated that each of the term royalty interests shall at the termination of their respective periods revert to and become the property of grantors, said deferred interests being now reserved, saved and excepted from the force and effect of these presents,

and reference is here made to each of the above instruments and their respective records for a further description of said term royalty interests.

It is this language that is the center of the controversy in this appeal.

The Kimble appellants now own the property by virtue of deeds from the Veterans' Land Board and its successors. FPJ and Gostecnik claim their rights through Blair and York who had later conveyed any right, title, or interest they had in the oil, gas, and other minerals in the property to their respective relatives.

**LAW**

We review declaratory judgments under the same standards as other judgments. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (Vernon 2008); *BMTP Holdings, L.P. v. City of Lorena*, 359 S.W.3d 239, 243 (Tex. App.—Waco 2011), *aff'd* 409 S.W.3d 634 (Tex. 2013). We look to the procedure used to resolve the issue before the trial court to determine the standard of review on appeal. *BMTP Holdings*, 359 S.W.3d at 243; *City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Because the trial court determined the declaratory judgment through summary judgment proceedings, we review the propriety of the trial court's declarations under the same standards that we apply to summary judgments. *See City of Galveston*, 196 S.W.3d at 221; *City of Austin v. Garza*, 124 S.W.3d 867, 871 (Tex. App.—Austin 2003, no pet.); *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

We review a trial court's decision to grant a motion for summary judgment de novo. *City of Lorena v. Bmtp Holdings, L.P.*, 409 S.W.3d 634, 645 (Tex. 2013). *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192, 199 (Tex. 2007). Under the traditional summary judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The granting of a no-evidence motion will be sustained when the evidence offered by the non-movant to prove a vital fact is no more than a mere scintilla. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). In the summary judgment context, we review the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

We may construe the deed as a matter of law only if it is unambiguous. *J. Hiram Moore, Ltd. v. Greer*, 172 S.W.3d 609, 613 (Tex. 2005). An instrument is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). If, however, a deed is subject to two or more reasonable interpretations, it is ambiguous. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). An ambiguity does not arise simply because the parties advance conflicting interpretations. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000); *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 727 (Tex. 1981). The

courts will enforce an unambiguous instrument as written; and, in the ordinary case, the writing alone will be deemed to express the intention of the parties. *Id.* at 728.

Here, none of the parties contend the additional language of the deeds is ambiguous. Their interpretations of the language, however, differ significantly. We agree that the language is unambiguous; thus, we will construe the language as a matter of law.

**RESERVATION**

Kimble first argues that the trial court erred in ruling that Blair and York reserved any royalty interest; and thus, erred in granting summary judgment in favor of FPJ and Gostecnik.

FPJ and Gostecnik each claimed in their motion for summary judgment that the "reversionary interests" described in the Warren deed and the Culpepper deed were reserved to Blair and York by the additional language in the 17 conveyances to the Veterans' Land Board, and thus, were now owned by the successors in interest to Blair and York; that being, FPJ and Gostecnik. Kimble argued in response that the VLB language only reserved a term royalty interest as specifically stated and not a permanent royalty interest.

In support of their argument, FPJ and Gostecnik primarily relied on the Texarkana Court of Appeals' opinion in *Corine, Inc. v. Harris*, 252 S.W.3d 657 (Tex. App.—Texarkana 2008, no pet.). In *Corine*, the court of appeals interpreted arguably

similar reservation language. Harris, the grantor of the deed in *Corine*, had also attempted to reserve a "reversionary interest" from a prior deed:

> …all of those royalty rights reserved by Marie Stevens, her heirs, executors and administrators, in [the 1970 deed], so that if the reversion described therein occurs, then the Grantors, their heirs, executors and administrators, will then be vested with said royalty rights described in said deed.

*Id*. at 660. The court of appeals determined that, based on this language, Harris intended to "reserve something" and that the "only logical conclusion" was that the grantors intended to reserve a royalty interest which was the size of Marie's (the previous grantor) reservation but which would be applicable after Marie's interest would terminate. *Id*. at 661. Applying *Corine* to this case, FPJ and Gostecnik argued to the trial court that the only logical conclusion was that Blair and York intended to reserve the same royalty interests reserved by Warren and Culpepper which would be applicable after Warren's and Culpepper's interests would terminate.

We agree with FPJ and Gostecnik that *Corine* controls the disposition of the issue in this proceeding. While the words used are slightly different; functionally, they are the same. Blair and York reserved unto themselves the interest that Warren and Culpepper had reserved only for a term of years. When they conveyed the property to the VLB, Blair and York were not "strangers" to the reservation as argued by Kimble. Rather, they were the owners of the interest that existed when the term royalty owned by Warren and Culpepper expired pursuant to its terms. As the owner of the entire

property and mineral estate subject only to the term royalty previously reserved, Blair and York could reserve for themselves any portion of the mineral estate. And that is precisely what the subject clause did. As in *Corine*, the reference to the term royalty was in reference to the size and type of the interest reserved; not the length or duration of the interest. *See Corine*, 252 S.W.3d at 661.

Kimble focuses on Warren and Culpepper's failure to make any reservation beyond the term royalty. A reversionary interest is a future interest in real property that remains with the grantor and may be viewed as claims to property that the grantor never gave away. *El Dorado Land Co., L.P. v. City of McKinney*, 395 S.W.3d 798, 803 (Tex. 2013). It is also freely assignable. *Id.* In *Corine*, Marie provided in the deed to Harris that upon the expiration of 20 years, if minerals were not being produced or if minerals ceased being produced, Marie's reservation would terminate and "said royalty interest shall pass to and vest in the Grantees (Harris)…." Kimble properly argues that neither Warren nor Culpepper made any provision as to what happened to their reserved interests once the reservations expired. Further, there is nothing in those term royalty reservations that indicate Warren or Culpepper intended to keep an interest in the property. Thus, there is no reversionary interest; that is, there is no future interest in the property that remained with either Warren or Culpepper. But it was Blair and York that owned the property when the future interest was reserved to themselves if the term royalty expired and was not extended by production; and it is undisputed that no oil or

gas was produced on the property at the expiration of 15 years from the date of the Warren conveyance or the date noted in the Culpepper conveyance.

Accordingly, Blair and York properly reserved unto themselves a royalty interest equal in amount to that term royalty interest previously reserved by Warren and Culpepper which became the property of Blair and York when the period of years set by Warren and Culpepper expired without production. The trial court did not err in granting summary judgment in favor of FPJ and Gostecnik, and Kimble's first issue is overruled.

**AMOUNT RESERVED**

The second issue raised by Kimble is that the trial court erred in granting summary judgment in favor of FPJ and Gostecnik for more than 1/16th non-participating royalty interest because the Veterans' Land Board–Veterans' Land Fund Act in effect in 1953 limited mineral reservations to a 1/16th non-participating royalty interest.

The Veterans' Land Board–Veterans' Land Fund Act was enacted in 1949 to provide land for Texas veterans of World War II and subsequent veterans to purchase. *See* Act of May 30, 1949, 51st Leg., R.S., ch. 318, § 3, 1949 Tex. Gen. Laws 592. It was amended in 1951 to require no greater a burden on the land than 1/16th non-participating royalty interest in the minerals of the land sold to the VLB. Act of June 2, 1951, 52nd Leg., R.S. ch. 324, § 2, 1951 Tex. Gen. Laws 556. It was amended again in

1955 to delete the no greater than 1/16th burden on the land requirement. Act of June 24, 1955, 54th Leg., R.S., ch. 520, § 2, 1955 Tex. Gen. Laws 1597. In 1953, Blair and York sold their property to the VLB. Kimble argues, without citation to any authority interpreting this particular provision of the Act, that the 1951 amendment applies to Blair's and York's sale of the property; and thus, their argument continues, FPJ and Gostecnik are not entitled to the trial court's award of a combined 50% of any royalty in any oil and gas lease covering the land.

Essentially any restrictions by the statute regarding what property could be purchased by the VLB and the terms of such deeds have long since passed. The ability of any party to raise a complaint that the extent of the mineral interest reserved exceeded the maximum allowed by statute could possibly have been a basis for a suit for rescission or reformation at the time.[1] Or, possibly, there could have been some claim under the warranty, if any, that was made that the conveyance complied with the VLB statute but did not. But there were no such claims brought in this proceeding. The only claim being to declare the meaning of the reservation as written in the deed and to declare FPJ and Gostecnik owners of certain parts of the royalty attributable to the land. Those were the claims presented to the trial court by motion for summary judgment. Those are the claims the trial court decided. The trial court did not err in declaring the

---

[1] Kimble specifically told the trial court at the hearing on the motions for summary judgment that reformation of the deed was not being requested.

meaning of the provision in the deed or in declaring FPJ's and Gostecnik's ownership interest in the royalties. Kimble's second issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed July 3, 2014
[CV06]