

## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

| | | |
|---|---|---|
| PERMICO ROYALTIES, LLC and ALDEN OESTREICH, | § | No. 08-22-00168-CV |
| | § | Appeal from the |
| Appellants, | | |
| | § | 143rd Judicial District Court |
| v. | | |
| | § | of Ward County, Texas |
| BARRON PROPERTIES LTD; KNACKWURST PROPERTIES LLC, and E. DON POAGE | § | (TC# 21-09-25858-CVW) |

Appellees.

### **MEMORANDUM OPINION**

This is an appeal from an order granting summary judgment in favor of Appellees, Barron Properties Ltd., Knackwurst Properties LLC, and E. Don Poage (collectively the Barron Entities), in which the trial court interpreted a 1937 deed as reserving a 1/16th fixed royalty to the original grantors and their heirs and assigns. Appellants, Permico Entities Royalties, LLC and Alden Oestreich (collectively the Permico Entities), who are successors-in-interest to the grantors, contend that the trial court erred and should have instead interpreted the deed as reserving a 1/2 floating royalty interest. For the reasons set forth below, we reverse the trial court's order and render judgment that the deed reserved a 1/2 floating royalty interest.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The deed

In 1937, O. N. and Nellie Rodgers, as the owners of a parcel of land in Ward County (the Grantors) conveyed all of their interests in the land to John Bush (the Grantee) by deed (the Rodgers Deed) subject to the following reservation:

> This conveyance is made subject to the reservation and exception, and the Grantors herein hereby specifically reserve unto themselves, their heirs and assigns, a one-sixteenth (1/16) free royalty interest, (being 1/2 of the usual 1/8th free royalty) in and to all of the oil and gas in and under, and that may be produced from, the above described land; but the Grantee herein, his heirs and assigns, shall have and he and they are hereby granted, the exclusive right, insofar as the Grantors herein are concerned, to execute and deliver any and all oil and gas leases on said land, and the Grantors, their heirs or assigns shall not join in such leases, but shall be entitled to receive 1/16th of the oil and/or gas produced, saved and sold from said land, being 1/2 of the usual 1/8th royalty therein.[1]

The parties agree that the Barron Entities, as the successors-in-interest to the Grantee, own the entire mineral estate subject to the royalty interest held by the Permico Entities, as the successors-in-interest to the Grantors. But they disagree on what that royalty interest is.

Prior to the Permico Entities obtaining their interest in the subject property, all interested parties interpreted the deed as reserving a 1/16th fixed royalty interest. However, when the Permico Entities obtained their interest in the property in January 2020, they notified the Barron Entities and the oil and gas operator, Pioneer Natural Resources USA (Pioneer), that they were disputing this interpretation, believing the Rodgers Deed reserved a 1/2 floating royalty interest. When the Barron Entities expressed their disagreement, Pioneer filed an interpleader action in the trial court,

---

[1] The parcel was described as "Section Ninety-Five (95), Block Thirty-Four (34)" of Ward County.

pursuant to Texas Rule of Civil Procedure 43, seeking a ruling regarding how it should distribute the royalties owed on the lease.[2]

The Permico Entities filed a cross-claim against the Barron Entities, seeking a declaratory judgment that the Rodgers Deed reserved a 1/2 floating royalty interest.[3] The Barron Entities then filed a crossclaim to quiet title and for a declaratory judgment that the Deed reserved a 1/16th fixed royalty interest in the Grantors. Following limited discovery, the Permico Entities filed a traditional motion for summary judgment on their claim for declaratory relief, while the Barron Entities filed a competing motion for summary judgment on their claim for quiet title, or in the alternative, a declaratory judgment in their favor.

Following a hearing, the trial court issued a final judgment denying the Permico Entities' motion for partial summary judgment and granting the Barron Entities' motion for summary judgment on their claim for quiet title, finding that the Rodgers Deed reserved a 1/16th fixed royalty interest in the subject property to the Grantors. It further ordered that the Permico Entities take nothing on their claims.

On appeal, the Permico Entities raise a single issue, contending that the trial court should have construed the Rodgers Deed as reserving a 1/2 floating royalty interest to the Grantors. We agree.

---

[2] The trial court later granted Pioneer's request to dismiss it from the lawsuit with prejudice, which became effective after Pioneer deposited into the trial court's registry the amount of royalties in dispute at that time and agreed to deposit any future disputed funds into the registry.

[3] In their counterclaim, the Permico Entities also referred to a 1961 deed in which Nellie Rodgers conveyed a floating nonparticipating royalty interest equal to 15/32 of the royalty on oil and gas produced from the subject property to a party not involved in this litigation. We do not consider it in our analysis because the Permico Entities did not rely on that deed in support of their motion for summary judgment.

## II.  STANDARD OF REVIEW

We review the grant of summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021) (citing *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)). In a traditional motion for summary judgment, the moving party must demonstrate that there are no genuine issues of material fact such that the party is entitled to judgment as a matter of law. *Id*. (citing TEX. R. CIV. P. 166a(c)). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). And when, as here, both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the evidence presented by both sides, determine all questions presented, and either affirm the judgment or render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see also Posse Energy, Ltd. v. Parsley Energy, LP*, 632 S.W.3d 677, 686 (Tex. App.—El Paso 2021, pet. denied) ("When cross-motions for summary judgment are filed, a court of appeals considers each motion and renders the judgment the trial court should have reached.").

## III.  APPLICABLE LAW

### A.  General principles of contract construction

Because none of the parties contend that the Rodgers Deed was ambiguous, our primary duty in construing the Deed is to "ascertain the intent of the parties from all of the language within the four corners of the [instrument]." *U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148, 151 (Tex. 2018) (citing *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). In doing so, we must examine the entire document, and we must seek to harmonize any seemingly inconsistent or contradictory provisions, giving "effect to all provisions so that none will be

4

meaningless." *Id*. (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991). In other words, we must take a "holistic approach aimed at ascertaining intent from all words and all parts of conveying instrument." *Id.* (citing *Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016)).

In interpreting the terms used in a document, unless otherwise defined in the text, courts will adopt the term's ordinary meaning. *Van Dyke v. Navigator Group*, 668 S.W. 3d 353, 359 (Tex. 2023) (citing *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763–64 (Tex. 2018)). However, we must also be guided by the principle that the text "retains the same meaning today that it had when it was drafted," and therefore, the words used in a deed must be given the meaning they had at that time. *Id.* at 359-60 (citing *Hysaw*, 483 S.W.3d at 13). And as explained below, mineral deeds of the era in which the 1937 Rodgers Deed was drafted used terms that conveyed a certain meaning that we must consider in discerning the Grantors' intent. *Id.* at 362-64.

### B. The nature of a mineral estate

We start with an overview of the nature of a mineral estate. A "mineral estate is comprised of five severable rights or attributes: (1) the right to develop; (2) the right to lease—which is also known as the executive interest; (3) the right to receive bonus payments; (4) the right to receive royalty payments; and (5) the right to receive delay rentals." *WTX Fund, LLC v. Brown*, 595 S.W.3d 285, 294 (Tex. App.—El Paso 2020, pet. denied) (citing *Hysaw*, 483 S.W.3d at 9). Because each estate attribute is an independent property right, the various rights may be "severed into a separate interest whether separately conveyed or reserved by the owner." *Ridgefield Permian, LLC v. Diamondback E & P LLC*, 626 S.W.3d 357, 363 (Tex. App.—El Paso 2021, pet. denied) (citing *Concord Oil. Co. v. Pennzoil Exploration and Production Co.*, 966 S.W.2d 451, 453, 457 (Tex. 1998)). Thus, a grantor may independently convey (or reserve) only a royalty interest,

without conveying (or reserving) any of the other attributes of the mineral estate to the grantee. *See French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995) (recognizing that a "conveyance of a mineral estate need not dispose of all interests; individual interests can be held back, or reserved, in the grantor"); *see also Luckel*, 819 S.W.2d at 463 (a royalty interest is "a nonpossessory interest in minerals that may be separately alienated"). This is considered a non-participating royalty interest, which carries with it no rights other than to receive royalty payments. *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015) (describing a non-participating royalty interest as "an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the [b]onus payable for, or the delay rentals to accrue under oil, gas, and mineral leases executed by the owner of the mineral fee estate").

"Royalty interests may be conveyed or reserved 'as a fixed fraction of total production' (fractional royalty interest) or 'as a fraction of the total royalty interest' (fraction of royalty interest)." *Hysaw*, 483 S.W.3d at 9 (quoting *Luckel*, 819 S.W.2d at 464). A fractional royalty interest, commonly referred to as a "fixed" royalty interest, remains constant and is not affected by the royalty amount in an oil, gas, or mineral lease. *Id*. On the other hand, a "fraction of" royalty interest, commonly referred to as a "floating" royalty interest, varies depending on the royalty set forth in an oil, gas, or mineral lease. *Id.* (recognizing that a floating royalty interest is calculated by multiplying the fraction of the royalty interest by the lease's royalty, which can change over time depending on lease terms). The language used in the deed determines whether a royalty interest is fixed or floating. *Id.*

### C. The legacy of the 1/8th royalty and the estate-misconception doctrines

The Supreme Court of Texas has recognized two related doctrines that generally apply when interpreting mineral deeds of a certain "era" or "vintage."[4] *See Van Dyke*, 668 S.W. 3d 363-64. The first is the legacy of the 1/8th royalty doctrine (the legacy doctrine) or "historical standardization" recognized in 1957. *Id.* at 363 (recognizing that the court took judicial notice of this doctrine in 1957) (citing *Garrett v. Dils Co.*, 299 S.W.2d 904, 907 (Tex. 1957) ("The court takes judicial knowledge of the fact that the usual royalty provided in mineral leases is one-eighth" and that the parties to a deed "doubtless assumed that the royalty under future leases would be one-eighth, as it was under the lease in existence when the deed was executed."). The legacy doctrine recognizes that during this era, "1/8" had acquired a "special meaning . . . in the standard-royalty context" based on the "near ubiquitous nature of the 1/8 royalty" in mineral leases. *Id.* (citing *Hysaw*, 483 S.W. 3d at 9-10); *Graham v. Prochaska*, 429 S.W.3d 650, 657 (Tex. App.—San Antonio 2013, pet. denied) (recognizing that "[i]n the 1920s and 1930s, the landowner's royalty became standardized at one-eighth of production") (citing *Concord Oil*, 966 S.W.2d at 459; *Luckel*, 819 S.W.2d at 462)). And because mineral interest owners of that era generally (but erroneously) believed that the royalty in a mineral lease would always be 1/8, "parties would use the term 1/8 as a placeholder for future royalties *generally*—without anyone understanding that reference to set an arithmetical value." *Id.*; *see also Graham*, 429 S.W.3d at 657 ("The historical standardization of the landowner's royalty at one-eighth of production has sometimes created confusion in the construction of deeds from that period, where the use of conflicting fractions suggests the parties mistakenly assumed the landowner's royalty would always be one-eighth."). In other words, 1/8 in a double fraction describing a royalty interest was intended to serve as a type

---

[4] We address below the Barron Entities' argument that the Rodgers Deed was not executed in this era.

of "shorthand" for what the mineral interest owner believed was "the entire royalty interest a lessor could retain under a mineral lease." *Hysaw*, 483 S.W.3d at 15.

Accordingly, in *Hysaw*, the court explained that when a double fraction involving 1/8, such as 1/3 of 1/8, was used in a mineral conveyance or reservation in describing a royalty interest during this era, the grantor's intent was not necessarily to multiply the fractions to determine a fixed royalty interest. *Id.* at 4–5. To the contrary, the court held that it could not "embrace a mechanical approach requiring rote multiplication of double fractions whenever they exist" and found that the trial court erred by interpreting "an undivided one-third (1/3) of an undivided one-eighth (1/8) of all oil, gas or other minerals in or under or that may be produced from any of said lands" as a 1/24th royalty interest. *Id.* The court recognized that while there may be exceptions to applying the legacy doctrine to deeds of this era, "the reality is that use of 1/8 (or a multiple of 1/8) in some instruments undoubtedly embodies the parties' expectation that a future lease will provide the typical 1/8th landowners' royalty with no intent to convey a fixed fraction of gross production." *Id.* at 10.

The second doctrine is the estate-misconception doctrine, which stems from another use of the 1/8th fraction in mineral deeds of this same era. As the court recently explained in *Van Dyke,* this doctrine recognizes that mineral interest owners during this era erroneously believed that they only retained a 1/8th interest in their mineral estate after they leased their property to an oil and gas operator for a 1/8th royalty. *See Van Dyke*, 68 S.W.3d at 363. Given this misconception, "for many years, lessors would refer to what they *thought* reflected their entire interest in the 'mineral estate' with a simple term they understood to convey the same message: '1/8.'" *Id*. The court therefore held that this was an "objective" indication of what a lessor intended when he used that fraction in a conveyance and that a court must therefore presume that 1/8 was an intended

placeholder for the lessor's "entire mineral estate, not just 1/8 of it." *Id.* at 364. And although a rebuttable presumption, the court was "not aware of double fractions including 1/8 that were aimed at simple multiplication rather than referencing the mineral estate as a whole." *Id.*

As the Barron Entities point out, the *Van Dyke* rebuttable presumption discussion regarded using 1/8 in the estate-misconception doctrine context, something not at issue here. However, the court in *Van Dyke* arrived at the presumption by first discussing *Hysaw*, which set up a presumption that double fractions involving 1/8 when describing a royalty interest invoked the legacy doctrine. *Id.* (reaffirming its holding in *Hysaw* and "clarify[ing] the import of our holding in that case," i.e., that "when courts confront a double fraction involving 1/8 in an instrument, the logic of our analysis in *Hysaw* requires that we *begin* with a presumption that the mere use of such a double fraction was purposeful and that 1/8 reflects the *entire* mineral estate, not just 1/8 of it"). We therefore conclude that the use of a double fraction involving 1/8th creates a rebuttable presumption that the parties intended to use the 1/8th as a placeholder for the royalty provided for in a lease (the legacy doctrine) or as a placeholder for the grantor's entire mineral estate (the estate-misconception doctrine). *See Royalty Asset Holdings II, LP v. Bayswater Fund III-A LLC*, No. 08-22-00108-CV, 2023 WL 2533169, at *4 (Tex. App.—El Paso Mar. 15, 2023, pet. filed) (mem. op.) (applying the *Van Dyke* presumption to a deed that used a double fraction involving 1/8th to describe a royalty interest). Because the presumption is rebuttable, we must examine the entire deed to determine whether the presumption has been rebutted by other provisions therein. *Id.* at *7–8.

## III.  DISCERNING THE GRANTORS' INTENT

The only question before us is whether the Rodgers Deed reserved a 1/16th fixed royalty interest (by multiplying the double fraction), as the Barron Entities contend, or a 1/2 floating

royalty interest (by applying the legacy doctrine), as the Permico Entities contend.[5] Before addressing how we view the reservation in the Deed, we address the Barron Entities' arguments that the legacy doctrine should not guide our decision.

### A. The legacy doctrine applies to deeds drafted in the 1930s

First, the Barron Entities contend that although the legacy doctrine has been applied to 1930s deeds, mineral interest owners knew or should have known by then that the royalty interest on mineral leases would not always be 1/8. According to the Barron Entities, by the 1930s, oil and gas leases existed on both public and private lands providing for royalties other than 1/8. Citing to the dissent in the *Garrett* opinion that first recognized the doctrine, the Barron Entities argue it is incorrect to presume that all mineral interest owners at the time believed that their royalty interest would always be 1/8. *See Garrett*, 299 S.W.2d at 910–11 (J. Norvell, dissenting) (opining that a court should not assume that the drafters of a 1921 deed were mistaken in the use of the 1/8th fraction and should instead "take the parties at their word" in construing the deed).

---

[5] While the Rodgers Deed's "in and under" language is normally associated with a mineral interest reservation, if the remainder of the deed makes it clear that it is referring to a royalty interest, a court should construe it as such. *See Bank One, Tex., Nat'l. Ass'n v. Alexander*, 910 S.W.2d 530, 532 (Tex. App.—Austin 1995, writ denied) (recognizing that the initial clause in a deed does not conclusively determine a mineral interest was created when subsequent language indicates that the parties only intended to create a royalty interest); *Altman v. Blake*, 712 S.W.2d 117, 118–19 (Tex. 1986) (language describing the interest as being to the minerals "in and under the land" is language typically associated with a mineral interest). Here, the Deed indicated a royalty interest reservation by stating it was a "free royalty interest," and the Grantors were entitled to "1/16th of the oil and/or gas produced, saved and sold from said land, being 1/2 of the usual 1/8th royalty therein." *See Chesapeake Expl., L.L.C. v. Hyder*, 483 S.W.3d 870, 873 (Tex. 2016) (recognizing that a royalty interest is often referred to as "free" or "cost-free," as it does not share in production costs); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015) ("a non-participating royalty interest is 'an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty,'" which does not carry other attributes of a mineral estate) (citation omitted); *Bank One, Tex., Nat'l Ass'n*, 910 S.W.2d at 534–35 (the reference to an interest in oil and gas "produced and saved" from the land is "persuasive that the interest is a royalty"); *Griffith v. Taylor*, 291 S.W.2d 673, 675 (Tex. 1956) (reservation of a "one-sixteenth (1/16) part of the minerals produced and saved or an equal one-sixteenth" was a reservation of a royalty interest).

The Supreme Court of Texas has repeatedly applied the legacy doctrine to deeds and wills conveying mineral interests beginning in the 1920s in *Garrett* until the 1960s.[6] *See, e.g.*, *Luckel*, 819 S.W.2d at 462 (applying doctrine to a 1935 deed); *U.S. Shale Energy*, 551 S.W.3d at 153 (utilizing doctrine in construing a 1951 deed); *Hysaw*, 483 S.W.3d at 6; (applying doctrine to a 1947 will); *KCM Fin*, 457 S.W.3d at 75 (recognizing that a "one-eighth royalty appears to have been commonplace in the general era in which the 1960 deeds were executed"). And the court has shown no signs of rejecting the doctrine, having favorably discussed it this year in *Van Dyke*. *See Van Dyke*, 668 S.W. 3d at 363 (discussing the doctrine with respect to a 1924 deed). Accordingly, to the extent that the Barron Entities ask us to reject the legacy doctrine or its application to deeds drafted in the 1930s, we decline to do so. *See Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (explaining that "[i]t is not the function of a court of appeals to abrogate or modify established precedent").

### B.  The legacy doctrine is applicable despite inconsistency in the deed

The Barron Entities next contend that even if the legacy doctrine applies to 1930s deeds, it should only be applied when inconsistencies or internal conflicts in deed provisions require harmonization, which is not the case here. According to the Barron Entities, the deed consistently stated in two separate provisions that the royalty interest being reserved was 1/16th, and a deed should be construed according to its "plain language." The Barron Entities cite several cases in

---

[6] As our sister court has recognized, it was not until the 1970s that it became commonplace for oil and gas leases to provide for anything other than a 1/8th royalty. *See Graham v. Prochaska*, 429 S.W.3d 650, 657 (Tex. App.—San Antonio 2013, pet. denied) (recognizing that leases containing royalties larger than 1/8 became increasingly common in the mid-1970s) (citing 1 Smith & Weaver, *Texas Law of Oil & Gas* § 2.4[B][1], at 2–64 (2d ed. 1998); *see also* II. TITLE AND CONVEYANCING ISSUES, 2016 WL 10609408 ("From the beginning of the oil and gas industry in Texas until the mid-1970's, the lessor's royalty under an oil and gas lease was almost always 1/8."); IV. WHAT COURTS CONSIDER TO DIVINE "OBJECTIVE INTENT", 2019 TXCLE-ACAP 11-IV, 2019 WL 4579707 (noting that "it was not until the 1970's that royalty interests greater than 1/8 became increasingly common").

11

which Texas courts have construed deeds containing double fractions, which were otherwise internally consistent, using simple arithmetic without relying on the legacy doctrine. *See, e.g.*, *Harriss v. Ritter*, 279 S.W.2d 845, 847 (Tex. 1955) (construing a 1942 deed as reserving a fixed 1/16 royalty where it reserved "one-half of one-eighth of the oil, gas and other mineral royalty that may be produced from said land . . . "). Many of these cases, however, predated *Garrett*, the case in which the doctrine was first announced.[7] *Garrett*, 299 S.W.2d at 907. Many, if not all, of the cases the Barron Entities cite predate *Hysaw,* where the court provided additional guidance regarding the legacy doctrine and how to interpret double fractions in mineral conveyances, expressing its disapproval of the "mechanical approach requiring rote multiplication of double fractions whenever they exist."[8] *Hysaw*, 483 S.W.3d at 4. Significantly, in *Hysaw*, the court applied the legacy doctrine in interpreting a royalty interest conveyance in a will even though the will contained no internal consistencies, consistently stating the testator was conveying a 1/3 of a 1/8 royalty interest. *Id*. at 15-16. The Barron Entities have not cited any post-*Hysaw* cases in which

---

[7] *See Richardson v. Hart*, 143 Tex. 392, 185 S.W.2d 563, 565 (1945) (construing a 1931 deed as conveying a fixed 1/128 interest where it conveyed "1/16th of 1/8th interest in and to all of the oil, gas and other minerals . . . "); *Allen v. Creighton*, 131 S.W.2d 47, 48–49 (Tex. App.—Beaumont 1939, writ ref'd) (construing a 1938 deed as conveying a 1/64 interest in oil produced where it conveyed "one-eighth (1/8) of the usual 1/8 royalties on each, any, and all other minerals that are in, on, or under, or which may be produced from" the land).

[8] *See Neel v. Alpar Res., Inc.*, 797 S.W.2d 361, 362 (Tex. App.—Amarillo 1990, no writ) (construing a 1938 deed as reserving a fixed 1/16 royalty interest where it reserved "an undivided one-sixteenth (1/16th) interest (same being one half (1/2) of the usual (1/8) royalty) in and to all of the oil, gas and other minerals . . . "); *Hawkins v. Tex. Oil & Gas Corp.*, 724 S.W.2d 878, 882 (Tex. App.—Waco 1987, writ ref'd n.r.e.) (construing a 1930 deed as conveying a fixed 1/32 royalty where it conveyed "1/4 of the 1/8th royalty interest in and to all of the oil, gas and other minerals . . . "); *Wynne/Jackson Dev., L.P. v. PAC Capital Holdings, Ltd.*, No. 13-12-00449-CV, 2013 WL 2470898, at *1 (Tex. App.—Corpus Christi June 6, 2013, pet. denied) (construing a series of deeds drafted in 1968 as reserving a fixed 1/16 royalty where deed reserved "one-half (1/2) of the usual one-eighth (1/8) royalty in and to all oil, gas, and other minerals produced . . . "); *Moore v. Noble Energy, Inc.*, 374 S.W.3d 644, 645 (Tex. App.— Amarillo 2012, no pet.) (construing a 1955 deed as reserving a fixed 1/16 where deed reserved "a one-half non-participating royalty interest (one-half of one-eighth of production)"); *Hudspeth v. Berry*, No. 2-09-225-CV, 2010 WL 2813408, at *2 (Tex. App.—Fort Worth July 15, 2010, no pet.) (construing a 1943 deed as reserving a fixed 1/40 royalty where deed reserved a "1/40th royalty interest (being 1/5th of 1/8th)."); *Corine, Inc. v. Harris*, 252 S.W.3d 657, 659 (Tex. App.— Texarkana 2008, no pet.) (construing a 1983 deed as reserving a fixed 1/16 royalty where deed reserved "one-half of the usual one-eighth royalty on all oil, gas, casing head gas and gasoline").

a court resorted to rote arithmetic in construing a double fraction in a mineral conveyance—internal deed inconsistencies or not.

In essence rejecting the notion that a party is first required to identify inconsistent provisions in a deed requiring harmonization before applying either the legacy of the 1/8th royalty doctrine or the estate-misconception doctrine, the *Van Dyke* court noted, "identifying a lack of inconsistent provisions that require harmonization gets the analysis backwards." *Van Dyke*, 668 S.W.3d. at 366. It is the use of a double fraction involving 1/8 that creates the rebuttable presumption regarding the grantor's intent.

### C. Restated fractions and nonrestrictive dependent clauses

Finally, the Barron Entities argue that the legacy doctrine should not apply here because unlike the conveyances in *Hysaw* and *Van Dyke*, the double fractions in the Rodgers Deed were placed within a nonrestrictive dependent clause. They explain that the double fraction in the first clause is contained within parentheses—describing the reservation as "a one-sixteenth (1/16) free royalty interest, (being 1/2 of the usual 1/8th free royalty)"—and the double fraction in the last clause is set off by a comma—describing reservation as "1/16th of the oil and/or gas produced, saved and sold from said land, being 1/2 of the usual 1/8th royalty therein." The Barron Entities contend that because a 1/16th royalty interest is described first in both clauses and the double fractions are contained in the nonrestrictive dependent clauses, the 1/16th royalty interest description is dispositive. We are urged to ignore the double fractions that follow as nonessential to the deed language and therefore nonessential to the Grantors' intent.

In support of this argument, the Barron Entities rely on two of our recent cases where we considered deeds in which the double fraction came first followed by a restated fraction in a nonrestrictive dependent clause. In *Bridges v. Uhl*, 663 S.W.3d 252 (Tex. App.—El Paso 2022, no

pet.), we considered a 1940 deed with a reservation of the right to "receive one-half (1/2) of the usual one-eighth (1/8) royalty, or one-sixteenth (1/16) of the total production" followed by a statement providing that if and when oil and gas are produced on the land, the grantor "shall receive one-half (1/2) of the usual one-eighth (1/8) royalty, or one-sixteenth (1/16) of the total production[.]" *Id.* at 258. In construing the deed as reserving a 1/2 floating royalty interest, we noted that the deed used a double fraction with 1/8, thereby invoking the legacy doctrine. *Id.* at 263–64. We further noted that the double fraction was followed by a restated single fraction of 1/16. *Id.* at 264–65. In explaining why we did not find 1/16 dispositive of the parties' intent in describing the royalty interest, we pointed out that it was offset by a comma and was therefore in a nonrestrictive dependent clause. *Id.* at 265. We stated that such a clause gives "additional description or information that is incidental to the central meaning of the sentence, but it could be taken out of the sentence without changing its essential meeting." *Id.* at 265 (quoting *U.S Shale Energy*, 551 S.W.3d at 153) (internal quotation marks omitted). We therefore concluded that "no emphasis should be placed on such a clause" because doing so would make it "essential to the sentence rather than incidental." *Id.* Instead, our focus was on the double fraction and the phrase the "usual one-eighth (1/8) royalty," which we noted was demonstrative of the parties' mistaken belief that the royalty interest would always be 1/8, thereby giving rise to the application of the legacy doctrine. *Id.* at 263 (citing *Hysaw*, 483 S.W.3d at 9–10). The only way to give meaning to all provisions in that deed was to conclude that the grantor was using 1/8 in the double fraction as a placeholder for what he believed was his entire royalty interest and that he therefore intended to reserve a floating 1/2 royalty interest rather than a 1/16th fixed royalty. *Id.* at 265.

Second, the Barron Entities rely on *Royalty Asset*, in which we considered a deed that conveyed "an undivided 1/4th of the land owner's usual 1/8th royalty interest (being a full 1/32nd

14

royalty interest)." *Royalty Asset Holdings II, LP*, 2023 WL 2533169, at *1. Again in that case, we applied the legacy doctrine and the *Van Dyke* rebuttable presumption in concluding that the deed conveyed a 1/4 floating royalty interest, given the deed's use of the double fraction, 1/4 of 1/8, describing the royalty interest. *Id.* at *3–4. And once again, in explaining why we did not find the restated single fraction of 1/32 to be dispositive of a 1/32nd fixed royalty, we noted that the single fraction was contained within a parenthetical, making it information that was "helpful but not essential" to the sentence's meaning. *Id.* at *5 (internal citations omitted). We held, however, that "the parenthetical single-fraction is consistent with the rebuttable presumption that the royalty interest is a floating 1/4 nonparticipating royalty interest." *Id.* at *5.

Relying on these two cases, the Barron Entities contend we should apply the same grammatical rule to in essence ignore the double fractions in the nonrestrictive dependent clauses. This position takes the grammatical argument to an extreme, something our precedent does not in any way support. To the contrary, in both cases, we applied the grammatical rule as a means of giving meaning to and harmonizing all provisions in the deeds under consideration rather than as a means of ignoring those same provisions. *Id.* (recognizing the need to consider a deed holistically and to "harmonize the deed's language in its entirety 'giving effect to all parts of the deed so no provision is rendered meaningless'"); *Bridges*, 663 S.W.3d at 265 (recognizing the need to view a deed holistically and to consider all provisions in the deed in interpreting its meaning). In other words, while the placement of a fraction (or in this case, a double fraction) in a nonrestrictive dependent clause may be of significance in interpreting a deed, it is not the dispositive consideration. *U.S. Shale Energy*, 551 S.W.3d at 154 (clarifying that the fact that the placement of a fraction was in a nonrestrictive dependent clause set off by a comma was not the "dispositive consideration" in interpreting the deed). An explanatory parenthetical or a nonrestrictive

dependent clause set off by a comma or commas lend further clues or insight into the drafter's intent. Thus, while applying grammatical rules such as this may be helpful in interpreting a deed, the key focus is still on harmonizing the entire deed to ensure that the court's interpretation "gives effect to all of its parts," not to ignore some. *Id.*

Yet here, the Barron Entities would have us entirely ignore the double fractions in the two clauses, according them no meaning whatsoever. In addition, the Barron Entities' suggestion that we ignore the double fraction in the deed—regardless of its placement in a nonrestrictive dependent clause—goes against the Texas Supreme Court's pronouncement that when a deed of this era contains a double fraction involving 1/8, there can be little other explanation for its use other than a "misunderstanding about the grantor's retained ownership interest or use of 1/8 as a proxy for the customary royalty." *Van Dyke*, 668 S.W. 3d at 363 (citing *Hysaw*, 483 S.W.3d at 10–11) (internal quotation marks omitted). And as the court recognized, it would "be odd to say 'one-half of one-eighth' rather than simply 'one-sixteenth' if all that was intended by 'one-half of one-eighth' *was* 1/16." *Id.* at 364 (citing *Hysaw*, 483 S.W.3d at 12). We therefore must consider the double fractions in the Rodgers Deed notwithstanding that they are in nonrestrictive dependent clauses.

### D. The Rodgers Deed reserved a floating 1/2 royalty interest

The Rodgers Deed contained two descriptions of the royalty interest reservation. First, it stated the Grantors were reserving a "sixteenth (1/16) free royalty interest, (being 1/2 of the usual 1/8th free royalty)." With reference to future leases, the Grantors were entitled to "receive 1/16th of the oil and/or gas produced, saved and sold from said land, being 1/2 of the usual 1/8th royalty therein." Multiplying the fractions, as the Barron Entities would have us do, we would be forced to conclude the Grantors only intended to reserve a fixed 1/16th royalty interest. However, if the

16

Grantors had meant to reserve a fixed 1/16th royalty interest, there would have been no reason for them to use the double fractions in not one, but two clauses, when describing the royalty interest. Accordingly, the only way to give meaning to all of the Rodgers Deed provisions (regardless of their placement in a nonrestrictive dependent clause) is to apply the legacy doctrine and find that the Grantors used the 1/8 fraction as a placeholder for the royalty provided for in a lease, believing that the royalty would always be 1/8.

This interpretation is bolstered by the fact that in both clauses, the Grantors used the term "the usual" 1/8 royalty. As explained above, 1/8 was the "usual" royalty during the era in which the Rodgers Deed was drafted. *See Hysaw*, 483 S.W.3d at 10 (citing *Luckel,* 819 S.W.2d at 462); *see also Concord Oil Co.*, 966 S.W.2d at 459–60 (plurality op.) (acknowledging 1/8 as the usual and customary royalty for an era and observing that mineral or royalty deeds containing differing fractions usually involve a multiple of 1/8). Accordingly, we may presume the Rodgers Deed drafters were evidencing their belief that 1/8 would always be the royalty interest under any future lease and consequently their intent to reserve a 1/2 floating royalty interest rather than a 1/6th fixed royalty. *See e.g.*, *Graham*, 429 S.W.3d at 665 (concluding that a deed that reserved a "one-half (1/2) of the usual one-eighth (1/8) royalty" reserved a one-half floating royalty interest under the legacy doctrine); *Hoffman v. Thomson*, 630 S.W.3d 427, 436 (Tex. App.—San Antonio 2021, pet. filed) (finding that the only way to harmonize all provisions in a deed that reserved "an undivided three thirty-second's (3/32's) interest (same being three-fourths (3/4's) of the usual one-eighth (1/8th) royalty)" was to construe the reservation as a floating 3/4ths royalty interest); *Bridges*, 2022 WL 17985705 at *8 (recognizing that the "repeated reference to the 'usual' 1/8 royalty," in a deed was indicative of the parties' misunderstanding that the royalty interest would always be 1/8 and further reflected their intent to use "the then-standard 1/8 royalty as a proxy for the

landowner's royalty"); *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 510, 512 (Tex. App.—Fort Worth 2011, pet. denied) (concluding deed that stated that grantors were entitled to "one half of the usual one eighth royalty received for such [sic] oil, gas and other minerals produced from said land" reserved a 1/2 floating royalty interest).

Moreover, we find nothing in the Rodgers Deed to rebut this presumption. Instead, the Deed consistently demonstrates an intent to convey a 1/2 floating royalty interest given its repeated use of the "usual 1/8 royalty" in the double fraction describing that interest. We find this to be the only way to harmonize all provisions in the Deed and to give all provisions meaning. Accordingly, we conclude that the trial court erred in construing the Deed as reserving a 1/16th fixed royalty interest rather than a 1/2 floating royalty interest.

We sustain the Permico Entities' sole issue.

## VI. CONCLUSION

We reverse and render judgement that the Rodgers Deed reserved a 1/2 floating royalty interest.

LISA J. SOTO, Justice

July 10, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.